Rhett O. Millsaps II (SBN 348949)
rhett@lex-lumina.com
Mark P. McKenna (*pro hac vice forthcoming*)
mark@lex-lumina.com
Christopher J. Sprigman (*pro hac vice forthcoming*)
chris@lex-lumina.com
LEX LUMINA LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (213) 600-6063

Martin Schwimmer (*pro hac vice forthcoming*)
Martin.Schwimmer@iamstobbs.com
STOBBS
214 W. Tremont Avenue, Suite 303
Charlotte, NC 28203
Telephone: (704) 702-6007

*Attorneys for Plaintiffs Adafruit Industries, LLC, Phillip Torrone, and Limor Fried*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ADAFRUIT INDUSTRIES, LLC, PHILLIP TORRONE, and LIMOR FRIED, <br><br> Plaintiffs, <br><br> v. <br><br> DEFY GRAVITY, INC. d/b/a FLUX, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Adafruit Industries, LLC ("Adafruit"), Phillip Torrone, and Limor Fried (collectively, "Plaintiffs"), by and through their undersigned counsel, for their complaint against defendant Defy Gravity, Inc. d/b/a Flux ("Defendant" or "Flux") hereby allege, on knowledge as to their own conduct and otherwise on information and belief, as follows:

## <u>NATURE OF THE ACTION AND RELIEF SOUGHT</u>

1. This is a civil action seeking a declaratory judgment and injunctive relief arising from Flux's improper legal threats hastily delivered through its legal counsel, a former FBI chief of staff, in an attempt to silence industry-leading journalistic outlet Adafruit.

2. Adafruit is a 100% woman-owned company based in Brooklyn, New York that designs, manufactures, and sells electronics and electronic components, including printed circuit boards. Adafruit also runs a blog, which is widely read among the "maker" community that designs and builds DIY electronics components.

3. In the course of interviewing Flux's founders for a possible feature story on Adafruit's blog, Adafruit's Managing Director, Torrone, discovered that Flux appeared to be misrepresenting usage of its purported "AI-assisted design platform." Specifically, Flux's claims that its platform had more than a million "builders" who were working on more than 6.4 million projects substantially inflated the number of both builders and projects, making the Flux platform appear to be much more successful and widely-used than it in fact is. Flux's misrepresentations were repeated by its associated venture capital firm, 8VC, and by a number of other publications.

4. Additionally, in the process of researching Flux, Torrone discovered a significant security flaw caused by a server misconfiguration that was out in the open—that is, all the information necessary to exploit the security vulnerability was publicly viewable by anyone on Flux's website.

5. On May 22, 2026, Torrone alerted Flux to his concerns about Flux's misrepresentations, told Flux that he would not be writing a feature story about Flux, and notified Flux about the security flaw.

6. Flux responded hours later on May 22 by sending a demand letter through counsel at a top U.S. law firm to Adafruit, Torrone, and Limor Fried, Adafruit's founder, claiming that Torrone's actions "violate U.S. criminal law" under the Computer Fraud and Abuse Act ("CFAA") and that his statements are "harassing, patently false, and potentially defamatory," without any colorable basis for those claims. Flux's letter demanded a response *by the next day*. Flux's letter also demanded, among other things, that Plaintiffs confirm in writing that none of them shared Flux information with any other parties, and that Plaintiffs refrain from sharing publicly any of the information that Torrone

COMPLAINT

discovered regarding Flux's misrepresentations or its security flaw. Flux's letter closed with a request that Adafruit share the letter with legal counsel and then noted that Flux "reserves all rights"—which Adafruit, Torrone, and Fried reasonably understood, in context, to mean that they could expect legal claims to be filed against them imminently unless they agreed to Flux's demands.

7. Flux's frivolous claims are a gross violation of Plaintiffs' First Amendment rights. The claims are meant solely to bully Adafruit, Torrone, and Fried into staying quiet about Flux's misrepresentations about the size and reach of its platform—misrepresentations that are highly relevant to the community of makers and DIY electronics components enthusiasts that Adafruit serves.

8. Plaintiffs, who have a very reasonable apprehension that Flux will imminently file suit against them, seek a judgment declaring that they neither defamed Flux nor violated the CFAA.

## **PARTIES**

9. Plaintiff Adafruit is a New York limited liability company with its principal place of business in Brooklyn, New York.

10. Plaintiff Torrone is the Managing Director of Adafruit. He resides in Brooklyn, New York.

11. Plaintiff Fried is the CEO of Adafruit. She resides in Brooklyn, New York.

12. Defendant Flux is a Delaware corporation with a principal place of business at 340 Bryant Street, Floor 3, San Francisco, California 94107.

## **JURISDICTION AND VENUE**

13. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that Plaintiffs have not violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' request for a declaratory judgment that Plaintiffs did not defame Flux and corresponding injunctive relief because the claims are so related by a common nucleus of facts that they form part of the same case and controversy.

14. This Court has personal jurisdiction over Defendant Flux in this action because Flux's principal place of business is located within this District, and Flux has engaged in substantial business within this District.

COMPLAINT

15. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant Flux conducts substantial business within this District, and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

## DIVISIONAL ASSIGNMENT

16. This action is properly assigned to the San Francisco Division of this District under Civil Local Rules 3-2(c) and 3-2(d) because Defendant Flux is headquartered in San Francisco County, which is the county where a substantial part of the events giving rise to Plaintiffs' claims occurred and where a substantial part of the property that is the subject of the action is situated.

## FACTUAL BACKGROUND

**Plaintiffs Adafruit, Torrone, and Fried**

17. Plaintiff Adafruit is a 100% women-owned manufacturing company and a certified Minority and Woman-owned Business Enterprise. It designs, manufactures, and sells electronics and electronic components, including printed circuit boards, in its factory lofts in Brooklyn's Industry City. Adafruit sells its wide variety of products on its website at www.adafruit.com.

18. Plaintiff Torrone is the Managing Director of Adafruit. He is married to Plaintiff Limor Fried. Torrone was previously director of new media for the digital design firm Braincraft and senior editor at *Make Magazine,* where he also worked on the Maker Shed online store and on Maker Faire, a family-friendly festival. He was also senior editor at *Popular Science,* how-to editor at *Engadget*, and founder of Hackaday.com.

19. Plaintiff Limor "Ladyada" Fried, an MIT-trained engineer, founded Adafruit in 2005. The Ladyada name honors Lady Ada Lovelace, one of the inventors of the computer. Fried has been named to the Forbes Innovator 250 list. She was featured on the cover of Wired Magazine.



COMPLAINT

20.    In 2016, the White House named Fried a Champion of Change to honor her contributions to the "maker movement"—a global, technology-based extension of do-it-yourself ("DIY") culture that champions hands-on creativity, engineering, and innovation. The maker movement transitions people from passive consumers into active creators by utilizing digital fabrication tools, open-source hardware, and collaborative community spaces.



21.    Adafruit maintains several social media accounts and other online outlets. Drawing on Torrone's extensive background as a journalist in the industry, Adafruit's outlets do much more than merely promote Adafruit's products—they allow Adafruit to function as a major voice in the maker/DIY and open-source hardware communities.

22.    For example, Adafruit maintains a blog at https://blog.adafruit.com/. The blog has approximately 380,000 users according to Google analytics, which is only a partial accounting of the blog's reach. The blog breaks news stories in the DIY electronics industry and is notable for Adafruit's rigorous and transparent editorial standards set out at https://www.adafruit.com/editorialstandards. The blog's stories are regularly picked up by the leading press outlets serving the maker, DIY, and open-source hardware and software communities, such as *The Verge*, *Ars Technica*, *Engadget*, and *Slashdot*.

23.    Adafruit also maintains a YouTube channel at https://www.youtube.com/@adafruit. Adafruit's YouTube channel has 467,000 subscribers and has published more than 11,000 videos.

24.    Adafruit's account on the X social media platform (@adafruit) amplifies Adafruit's reach by publishing to its 241,100 followers posts that include links to its blog and YouTube channel.

Adafruit also disseminates content through Mastodon (mastodon.cloud/@adafruit), Instagram (instgram.com/Adafruit), GitHub (github.com/Adafruit), Facebook (faebook.com/adafruitindustries), and LinkedIn (linkedin.com/company/Adafruit).

25.    Adafruit's social media outlets report on technical developments in the open-source and DIY world, spotlight projects created by customers and Adafruit staff, and disseminate educational material, such as "L is for LED", a video for children.



**Defendant Flux and Its Claims of One Million-Plus Users**

26.    Flux claims to be an AI-assisted design platform. Specifically, on its website, Flux describes itself as "an AI-powered assistant that speeds-up tasks, provides real-time insights, and modifies your PCB [printed circuit board] design directly." A copy of a document provided on Flux's website titled "Getting Started with Flux" is attached hereto as Exhibit A.

27.    On February 27, 2026, Flux published a post on its blog ("the Flux Blog Post") that stated in part: "To date, **1,099,361** builders have used Flux to create **6,425,482** projects, and this raise gives us the resources to move faster and to help more builders move through the hardware workflow with less friction." (emphasis in original). A copy of the Flux Blog Post is attached hereto as Exhibit B.  That post was signed by "Lance, Matthias, and the Flux team." Lance Cassidy is the Founder and Chief Operating Officer of Flux, and Matthias Wagner is the Founder and Chief Executive Officer of Flux.

6
COMPLAINT

28.    On February 27, 2026, Flux caused a press release to be distributed to a public relations website, GlobalNewsWire, which stated in part: "More than 1 million makers, designers, and entrepreneurs have used Flux to design nearly 6.5 million devices, from wearables to robots to smart home controllers and drone navigation systems." Torrone became aware of Flux based on that press release, a copy of which is attached hereto as Exhibit C.

29.    The information in the Flux Blog Post was widely disseminated. For example, on March 5, 2026, a tech industry publication, *The Top Voices*, reported that Flux had recently raised $37 million in new venture capital funding, repeating claims from the Flux Blog Post that "[t]oday, more than 1,099,361 builders have created over 6,425,482 projects on the platform, reflecting growing adoption across the hardware community." A copy of that article is attached hereto as Exhibit D.

30.    Another industry publication, *The SaaS News*, also reported on the Flux funding round, stating that "[w]ith over **1 million** users designing nearly **6.5 million** devices globally, Flux empowers individuals and businesses to innovate across applications ranging from IoT devices to biomedical platforms" (emphasis added). A copy of that article is attached hereto as Exhibit E.

31.    On February 27, 2026, the venture capital firm 8VC republished Flux's claim of one million users, posting on X that it was "Proud to lead @BuildWith Flux's $27M (sic) Series B . . . 1M users and 6.5 projects later, the creative hardware revolution is here." The 8VC post on X also embedded a 42 second video depicting Matthias Wagner promoting the Flux product. In that video, Wagner stated "We've already seen millions of engineers turn their ideas into hardware with Flux." A screenshot of the post is attached hereto as Exhibit F.

<div align="center">7</div>

<div align="center">COMPLAINT</div>

**Flux's Claim of 1 Million "Builders" Is False**

32.     On October 23, 2025, Flux claimed on its website home page to have 1,099,361 Builders. A copy of Flux's home page as of that date taken from the Wayback Machine is attached hereto as Exhibit G.  Flux claimed to have 1,099,361 Builders on November 22, 2025. A copy of Flux's home page as of that date taken from the Wayback Machine is attached hereto as Exhibit H. On January 3, 2026, Flux claimed on its home page to have 1,099,361 Builders. A copy of Flux's home page as of that date taken from the Wayback Machine is attached hereto as Exhibit I. And today, June 5, 2026, Flux claims on its home page to have 1,099,361 Builders. A copy of Flux's home page as of today is attached hereto as Exhibit J.

33.     In the context of Flux's home page, the reported number of Builders, Projects, and Components will be understood by market participants to represent an up-to-date count that changes rapidly— because people understand that there would need to be daily and continuous growth in the number of users for a start-up to achieve such significant user numbers. Market participants would also note that the numbers "1,099,361", "6,425,482", and "821,334" (collectively, the "Numbers"), do not appear to be rounded estimates, but rather exact figures. For this reason as well, market

COMPLAINT

participants are likely to perceive the Numbers as up-to-date, precise numbers, likely generated by an automated counter.

34. Upon information and belief, however, Flux did not use a counter applet to generate and display the Metrics. Using the "Inspect" function on the Chrome browser, the code on the page flux.ai suggests that the Numbers were typed in, not generated by a counter, and that the specific Numbers were entered at least as early as October 23, 2025, and appear to be unchanged since then.

```
<div class="number-stats">1,099,361</div> == $0
  <div class="text-block-64">Builders</div>
</div>
▼<div id="w-node-f5f0c11d-80cb-7674-e4a5-e071fd579606-3e9ce52b">
  <div class="number-stats">6,425,482</div>
  <div class="text-block-64">Projects</div>
</div>
▼<div id="w-node-_20f533dd-83d7-6204-de98-f3584cd9c526-3e9ce52b">
  <div class="number-stats">821,334</div>
  <div class="text-block-64">Components</div>
```

35. In sum, static Numbers have been presented publicly over a period of nearly seven months to represent three ordinarily dynamic metrics of product use—registered user, projects, and components.

36. Flux's quotation of these precise Numbers in the Flux Blog Post, and its repetition of those Numbers since then, suggest Flux's awareness of the Numbers on February 27. As the Numbers are viewable every day on Flux's home page, Flux presumably also is aware that the Numbers are static, and therefore wrong.

**Adafruit's Communications with Flux**

37. In his capacity as a technology journalist publishing on Adafruit's blog, Torrone reached out to Flux CEO Wagner on March 1, 2026. Torrone was interested in reviewing the Flux product because software that would greatly simplify the process of designing and fabricating printed circuit boards makes the platform of great interest to Adafruit's audience, many of whom are makers who might use Flux to design printed circuit boards and other DIY electronics hardware projects.

COMPLAINT

38. Over the course of March 2026, Torrone was in email dialogue with employees and representatives of Flux regarding a possible profile on the Adafruit blog. A copy of the 12 emails between Torrone and Flux during that time are attached hereto as Exhibit K.

39. The emails from Torrone consisted primarily of questions that Torrone drafted for Flux and 8VC, Flux's venture capital firm, regarding Flux's products and services. Flux copied Firebrand, Flux's public relations firm, and Firebrand provided the substantive responses to Torrone's questions. Many of those responses, especially to Torrone's requests for substantiation of Flux's claims regarding the number of users and projects on the platform, were evasive.

40. Relying on his experience as a participant and chronicler of the maker industry, Torrone was skeptical that a product targeting DIY engineers could have 1 million registered accounts and more than 6.4 million bona fide projects. In Torrone's experience, the maker market for printed circuit boards and other DIY electronics components was far too small to support such large numbers.

41. Torrone created a user account on Flux as part of his intended product review of Flux on the Adafruit blog.

42. In light of the evasive responses to some of Torrone's questions provided by Flux and Firebrand, Torrone began to form the opinion that Flux's claims regarding the number of users and projects on the platform were false. Flux declined to identify any customer of Flux, even if Torrone promised to maintain the anonymity of any such customer's identity in his reporting. Torrone doubted that a firm that claimed to have over one million customers could not identify a single customer who was willing to be identified.

43. Torrone's review of the projects shown on publicly accessible areas of the Flux website suggested to him that Flux's claims regarding the number of users and projects was considerably exaggerated.

44. On May 22, 2026, Torrone wrote to Flux stating that he believed that the claims made by Flux and their funders regarding the number of users and projects on Flux's platform were false. Torrone also came to the conclusion that certain other statements Flux made, for example statements regarding electronic components designed on Flux having been used in a space mission, were false.

COMPLAINT

45.     In that same May 22 email, Torrone attached a short report regarding a security vulnerability he had noticed while using the Flux website. It is common in the industry for users to report security vulnerabilities like the one Torrone reported to Flux. While he was on the Flux site, Torrone noticed that the site had some performance issues, including failing to log out users who had requested to be logged out. In addition, it was Torrone's regular practice, when reviewing a web-based service like Flux, to determine whether the site might have security issues—Torrone's readership would expect that Torrone would only recommend web-based services that had secure websites.

46.     The information contained in Torrone's security vulnerability report to Flux was obtained by accessing information available out in the open to anyone who visits Flux's website. Neither Torrone nor anyone else at Adafruit ever bypassed a security measure on the Flux site or exceeded the scope of their permissions to learn of the security flaw. Torrone sought no benefit from reporting this security vulnerability. He did it voluntarily and in a good faith effort to alert Flux to a problem with its website's security.

47.     The information that creates the security vulnerability that Torrone reported to Flux can be accessed through the following steps, available to anyone visiting Flux's public website. These steps are visually depicted in Exhibit L attached hereto.

       i.     Visit flux.ai website without a login;

      ii.     Open the browser's developer panel (the developer panel is a regular feature of modern browsers and can usually be accessed with a few keystrokes—for example, option+command+I on the Chrome browser running on a mac computer);

     iii.     In the developer panel, click on the Application pane;

     iv.     Locate the navigation bar for application keys/values on the left side;

     v.     Scroll and select/open to Storage -> IndexedDB -> firebaseLocalStorageDb -> firebaseLocalStorage;

     vi.     Locate the 'fbase_key' on the right side of the Applications pane. Click on the value (which sometimes opens to view) or select it all and paste into a text editor; and

vii. Locate the firebase apiKey, appName and stsTokenManager:accessToken (sts is for 'security token service') that is provisioned by Flux for anonymous use of the Flux website without the need to complete log-in credentials.

**Flux's May 22 Demand Letter to Adafruit**

48.     Several hours after Torrone sent his May 22 email, Jonathan Lenzner, a former FBI chief of staff and a partner in the Fenwick law firm whom Fenwick touts as "a nationally recognized leader in high-stakes crisis management," acting on behalf of Flux, sent a demand letter to Adafruit (the "Demand Letter"), attached hereto Exhibit M.

49.     Flux's Demand Letter asserts that Torrone's May 22 email contained "demonstrably false" statements that defamed Flux and its CEO. Further, it asserts that Adafruit's security disclosures "violated federal law"—specifically the CFAA—and threatened *criminal* liability under the CFAA. Further, Flux's counsel asserted—without offering any evidence or explanation—that Adafruit and Limor Fried had "aided and abetted" Torrone's alleged lawbreaking.

50.     On May 23, Adafruit acknowledged receipt of the Demand Letter through an email from its counsel. A copy of that email is attached hereto as Exhibit N.

51.     On May 26, Adafruit, through counsel, requested clarification of several points in the Demand Letter relating to whether the alleged defamatory content had been published—which it has not been—and requested that Flux explain its theory as to why Torrone's activities were unlawful under the CFAA—which they plainly are not. A copy of Adafruit's counsel's email is attached hereto as Exhibit O.

52.     On May 28, Flux reiterated its demands in an email from Lenzner, its counsel at Fenwick. Flux asserted that the defamatory content was published by means of copying Flux's venture capital firm 8VC —a firm that had publicly repeated Flux's false claims about the number of users and projects—on the emails between Torrone and Flux. Flux also claimed that the CFAA applied because, in its view, Torrone did not act in good faith. Lenzner concluded his email by stating, "Your timely provision of the information and assurances [previously demanded by Flux] is imperative if we are to

move from a path of confrontation to a path toward resolution." A copy of Lenzner's May 28 email is attached hereto as Exhibit P.

### FIRST CLAIM FOR RELIEF
**Declaratory Judgment that Plaintiffs Have Not Violated the
Computer Fraud and Abuse Act (18 U.S.C. § 1030) ("CFAA")**

53.    Plaintiffs hereby incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

54.    Under the Declaratory Judgment Act, courts may "declare the rights and other legal relations" of parties "to a case of actual controversy." 28 U.S.C. § 2201.

55.    An actual controversy exists between Adafruit, Torrone, and Fried, on the one hand, and Flux, on the other. Flux, through its demand letters and threats of litigation and false allegations of criminal conduct, is attempting to use the law to silence Adafruit, Torrone, and Fried, and to keep the falsity of its claims regarding its number of users and projects from being known.

56.    Flux's claims that Torrone's accessing of information on the Flux website that was *publicly accessible* violated the CFAA are false, and Flux knows or should know they are false. Torrone did not engage in any unauthorized access of Flux's systems. He did not defeat any access controls protecting private areas of Flux's site. Indeed, Torrone at no time accessed any areas of Flux's website or associated computer systems that were not open to any member of the public using Flux's site. Nor did Torrone see any files, or access any information, that were not available to any member of the public using Flux's site. And yet Flux has threatened Adafruit, Torrone, and Fried with litigation under the CFAA—and possible criminal referral—if they refuse to comply with Flux's demands, which are intended to keep Flux's materially false representations from becoming known to the public.

57.    Adafruit, Torrone, and Fried therefore have a real and reasonable apprehension that they will be subject to legal action if they do not accede to Flux's demands. This apprehension was caused by Flux's actions, specifically its demand letters sent to Adafruit by Flux's counsel Lenzner threatening legal action, including possible criminal referral, against Adafruit, Torrone, and Fried.

58.    The controversy between Plaintiffs and Flux is thus real and substantial and demands specific relief through a decree of a conclusive character.

59.     Plaintiffs are entitled to declaratory judgment that they did not violate the CFAA in reporting to Flux a security flaw they discovered based wholly on publicly available information on Flux's website, including injunctive relief to enjoin Flux from making assertions that they violated the CFAA in doing so.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment that Plaintiffs Did Not Defame Flux

60.     Plaintiffs hereby incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

61.     There is a real and actual controversy between Plaintiffs and Flux regarding whether the emails at issue sent by Torrone constitute defamation of Flux.

62.     Torrone never made any false statements about Flux. Torrone informed Flux of his conclusion that Flux was overstating the number of users and projects and set out his basis for that conclusion. Flux's claims regarding its number of users and projects are in fact false, and thus Torrone's statements cannot be defamatory.

63.     Torrone also did not publish any of his statements to third parties. Torrone included 8VC, Flux's venture capital firm, on the email communications at issue because 8VC adopted Flux's statements as its own and publicly repeated them, in the context of touting Flux's capital raise.

64.     As discussed above, upon information and belief, Flux has misstated its number of registered users, or builders, and the level of projects created by the supposed builders. The failure of Flux to identify any meaningful level of use of its projects by third parties (as opposed to use by Flux employees and Flux-affiliated entities) suggests that Flux has materially misstated the level of customer acceptance for its product.

65.     Flux's threat of legal action against Plaintiffs for defamation is intended to stop Plaintiffs from reporting the results of Torrone's investigation and thus has a deliberate chilling effect on Plaintiffs' First Amendment rights to speak and report on matters of public interest.

66.     Plaintiffs are entitled to declaratory judgment that they did not defame Flux by making truthful statements about Flux's misrepresentation of its number of users and projects that were never published to any third party.

14

COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant Flux as follows:

A.    For a declaratory judgment that Plaintiffs have not violated the CFAA or defamed Flux;

B.    For an order enjoining Flux, and its agents, attorneys, and assigns, from asserting claims for violation of the CFAA or defamation against Plaintiffs in connection with the matters set out herein;

C.    Plaintiffs' attorneys' fees and costs incurred in pursuing this action as permitted by law;

D.    Pre-judgment and post-judgment interest; and

E.    For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a jury trial for all issues so triable in this action.

Dated: June 5, 2026                              Respectfully submitted,

LEX LUMINA LLP

By: /s/ *Rhett O. Millsaps II*
Rhett O. Millsaps II (SBN 348949)
rhett@lex-lumina.com
Mark P. McKenna (*pro hac vice forthcoming*)
mark@lex-lumina.com
Christopher J. Sprigman (*pro hac vice forthcoming*)
chris@lex-lumina.com
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: +1 213.600.6063

Martin Schwimmer (*pro hac vice forthcoming*)
Martin.Schwimmer@iamstobbs.com
STOBBS
214 W. Tremont Avenue, Suite 303
Charlotte, NC 28203
Telephone: (704) 702-6007

*Attorneys for Plaintiffs Adafruit Industries, LLC, Phillip Torrone, and Limor Fried*

15

COMPLAINT