ERIC BALL (CSB No. 241327)
eball@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

BENJAMIN S. KINGSLEY (CSB No. 314192)
bkingsley@fenwick.com
KATHERINE A. MARSHALL (CSB No. 327042)
kmarshall@fenwick.com
FENWICK & WEST LLP
One Front Street, Floor 33
San Francisco, CA 94111
Telephone: 415.875.2300

JON LENZNER (NYSB No. 4283164)
*Admitted Pro Hac Vice*
JLenzner@fenwick.com
FENWICK & WEST LLP
1155 F Street NW, 12th Floor
Washington, DC 20004
Telephone: 202.970.3000

Attorneys for Defendant
DEFY GRAVITY, INC. d/b/a FLUX

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADAFRUIT INDUSTRIES, LLC, PHILLIP TORRONE, and LIMOR FRIED,<br><br>Plaintiffs,<br><br>v.<br><br>DEFY GRAVITY, INC. d/b/a FLUX,<br><br>Defendant. | Case No.: 3:26-cv-05480-LB<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: October 8, 2026**<br>**Time: 9:30 a.m.**<br>**Dept: Courtroom B – 15th Floor**<br>**Judge: Hon. Laurel Beeler** |

## TABLE OF CONTENTS


**Page**

ISSUES TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. THE PARTIES ..... 3

B. PLAINTIFFS' CONDUCT AND FLUX'S RESPONSE ..... 3

1. Torrone's Communications with Flux ..... 3

2. Flux's Cease-and-Desist Letter and Plaintiffs' Response ..... 4

C. THIS LITIGATION ..... 8

III. ARGUMENT ..... 9

A. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER FLUX'S CLAIM FOR A DECLARATORY JUDGMENT REGARDING VIOLATIONS OF THE CFAA ..... 9

1. The Court Cannot Issue a Declaratory Judgment if the Claim is Moot ..... 9

2. Flux's Release Moots Plaintiffs' Claim Based Upon the CFAA ..... 10

B. THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' REMAINING STATE LAW CLAIM ..... 10

IV. CONCLUSION ..... 12


FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .................... 9

*Alvarez v. Smith*,
558 U.S. 87 (2009) .................... 9

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007) .................... 10

*Buzzballz, LLC v. MPL Brands NV, Inc.*,
826 F. Supp. 3d 1093 (N.D. Cal. 2025) .................... 9, 10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) .................... 9

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) (*superseded by statute on other grounds as stated in Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)) .................... 11

*Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*,
642 F.3d 849 (9th Cir. 2011) .................... 10

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .................... 9

*Genesis HealthCare Corp. v. Symczyk*,
569 U.S. 66 (2013) .................... 9

*Murphy v. Hunt*,
455 U.S. 478 (1982) .................... 9

*Ove v. Gwinn*,
264 F.3d 817 (9th Cir. 2001) .................... 11

*Pub. Util. Comm'n of State of Cal. v. F.E.R.C.*,
100 F.3d 1451 (9th Cir. 1996) .................... 9

*Rivas Rosales v. Barr*,
2020 WL 1505682 (N.D. Cal. Mar. 30, 2020) .................... 10

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) .................... 11

FENWICK & WEST LLP
ATTORNEYS AT LAW

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
2022 WL 345066 (N.D. Cal. Feb. 4, 2022) ........ 11

*Westburg v. Good Life Advisors, LLC*,
2019 WL 1546949 (S.D. Cal. June 8, 2019) ........ 9, 10, 11

**Statutes**

28 U.S.C. § 1367 ........ 10, 11

Computer Fraud and Abuse Act ........ *passim*

Declaratory Judgment Act ........ 10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ........ 1, 12

U.S. Const., Art. III, § 2 ........ 9

U.S. Constitution Article III ........ 9

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 8, 2026, at 9:30 a.m., or as soon thereafter as the Court's schedule allows, in the courtroom of the Honorable Laurel Beeler, 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Defy Gravity, Inc. d/b/a Flux ("Flux" or the "Company") will move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Flux moves on the grounds that (1) Flux's unilateral release of its Computer Fraud and Abuse Act ("CFAA") claim moots Plaintiffs' claim for declaratory judgment based on the CFAA; and (2) the Court should decline to exercise supplemental jurisdiction over Plaintiffs' claim for declaratory judgment based upon defamation, a state law claim with no independent basis for jurisdiction. Flux's motion is based on this Notice of Motion and Motion to Dismiss, the following Memorandum of Points and Authorities, arguments of counsel, and any other matters properly before the Court. Through this motion, Flux seeks an order dismissing the Complaint for lack of subject matter jurisdiction.

## ISSUES TO BE DECIDED

1. Whether Defendant's unilateral release moots Plaintiffs' claim for declaratory judgment based on the CFAA such that the claim must be dismissed for lack of subject matter jurisdiction.

2. Whether, in the event that the Court dismisses the sole federal claim for lack of subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law declaratory judgment claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

When Plaintiff Phillip Torrone ("Torrone") reached out to Defendant Defy Gravity, Inc. d/b/a Flux ("Flux" or the "Company") and claimed he had accessed Flux's non-public documents through a security vulnerability on its website, Flux reacted as any responsible company would: it asked Torrone to cease and desist from accessing Flux's non-public information and refrain from disseminating it, noting that unauthorized access to its computer systems violated the Computer

Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and asked questions about the nature of the access.

Flux's interest in engaging with Torrone was in ensuring that he ceased and desisted from hacking Flux's systems without authorization, and that he destroyed or returned any non-public Flux information obtained from those systems. If Torrone (personally or through counsel) had merely responded at that time by simply telling Flux what he has now admitted for the first time in his Complaint—that he had accessed publicly available information from Flux's website and in fact never bypassed any security measures or obtained unauthorized access to Flux's non-public information—this lawsuit could have been avoided. Instead, Torrone's counsel responded to Flux's cease-and-desist letter by asserting that the U.S. Department of Justice has a policy of not prosecuting otherwise illegal activity under § 1030 where the wrongdoer was engaging in "good faith security research." Though this was a generally accurate statement of Department of Justice charging policy for criminal violations of 18 U.S.C § 1030, it also implied that Torrone had, in fact, obtained unauthorized access into Flux's systems, and thus made Flux even more concerned that, whatever his motivations, Torrone had illegally hacked its private data. Nonetheless, interested solely in ensuring the safety of its data, Flux patiently asked again for information about Torrone's access to its systems and stated that it was open to quickly reaching a reasonable understanding to resolve the matter. Instead of answering any of Flux's questions, Torrone then rushed to court, together with his wife, Plaintiff Limor Fried ("Fried"), and her company, Adafruit Industries, LLC ("Adafruit," and together with Torrone and Fried, "Plaintiffs"), and sued Flux, seeking a declaration from this Court that Torrone's actions did not violate the CFAA. In so doing, he filed the operative Complaint which explained, for the very first time, that Torrone had not actually exploited a security vulnerability to obtain unauthorized access to Flux's non-public systems but instead that the only information Torrone accessed was publicly available from Flux's website.

Flux has no dispute with Torrone, Fried, or Adafruit regarding the CFAA claim, and no interest in further wasting the time and resources of the parties and the Court on this matter. Accordingly, concurrently with this motion, Flux has executed, sent to Plaintiffs, and filed an unconditional and irrevocable unilateral release of any CFAA claim it may have against Plaintiffs

based on the actions at issue in the Complaint. Flux's release moots Plaintiffs' claim for declaratory judgment based on the CFAA claim, ending this Court's subject matter jurisdiction over that claim.

As the Court lacks subject matter jurisdiction over the only federal claim in this action, the Court should decline to exercise jurisdiction over Plaintiffs' state law claim, in which Plaintiffs seek a declaration that their statements in Torrone's email circulating the purported "security report" were not defamatory. Flux never threatened or even suggested that it would bring a defamation claim over Torrone's statements, which Flux's response to Torrone described only as "potentially defamatory." Compl. Ex. M, ECF No. 1-13 at 2 (May 22, 2026 letter from Jon Lenzner, Counsel for Flux, to Plaintiffs). Given that this case is in the earliest stages and Plaintiffs have not adequately pleaded the need for a declaratory judgment as to defamation, the Court should decline to exercise supplemental jurisdiction and dismiss this case in full.

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Adafruit "designs, manufactures, and sells electronics and electronic components, including printed circuit boards." Compl. ¶ 2, ECF No. 1. Plaintiff Fried is the CEO of Adafruit and Plaintiff Torrone is the Managing Director of Adafruit. *Id.* ¶¶ 10, 11.

Defendant Flux is a software company that has created an artificial intelligence-powered assistant for creators of printed circuit boards. *See* Compl. Ex. A. Flux's product speeds up tasks, provides real-time insights, and modifies a Flux user's printed circuit board design directly, including by integrating into the user's workflow, and helping the user find components, analyze datasheets, perform calculations, and make design changes more efficiently. *Id.*

Adafruit and Flux's product offerings are different; Adafruit designs, manufactures, and sells physical electronics and electronic components, whereas Flux sells software that uses artificial intelligence to help users create and modify their own physical electronics and electronic components. *Compare* Compl. ¶ 1 *with* Compl. Ex. A.

### B. Plaintiffs' Conduct and Flux's Response

#### 1. Torrone's Communications with Flux

Torrone first contacted Flux on March 1, 2026. Compl. Ex. K, ECF No. 1-11 at 2. On that

FENWICK & WEST LLP
ATTORNEYS AT LAW

day, Torrone sent an email to Matthias Wagner, CEO of Flux, copying Francisco Gimenez of 8VC, one of Flux's investors, claiming that Torrone was writing an article about Flux and asking questions about Flux's growth metrics. *Id.* at 2–3. Torrone asked for detailed information about Flux's users, projects, devices, funding, customers, billing practices, and cancellation process. *Id.* In closing, he claimed that he and Adafruit "just want to make sure the numbers reflect real humans making things." *Id.* at 3. In response, Flux politely answered Torrone's questions. *Id.* at 7–8.

Torrone sent follow up questions on March 4, 2026, and Flux continued to politely respond. *Id.* at 9–10. That same day, Torrone asked even more detailed questions about Flux's customer metrics, claiming that he was "not trying to write a hit piece" and that he was "trying to write an article that holds up to the amount of scrutiny it will get" but "[r]ight now I don't have enough to do that." *Id.* at 11. In response, Flux, a private company, explained that "[w]e understand you're looking for more detail about customer metrics, but we've answered those questions as best we can given the information Flux is sharing right now." *Id.* at 14. Flux added, "[w]e're sorry if that keeps you from writing the story you had hoped to publish." *Id.*

Apparently not satisfied with this response, Torrone unilaterally decided to take more aggressive actions against Flux. On May 22, 2026, Torrone sent an email to Flux, again copying one of Flux's investors, 8VC ("May 22 Email"). In the email, Torrone stated that he had identified a security vulnerability in Flux's systems (*see* Compl. ¶ 45), and used "a Firestore access control issue" to access at least three nonpublic Flux documents maintained in Flux's database (Compl. Ex. M at 2–3). Torrone asserted that he did not take any Flux data apart from these documents and did not retain, redistribute, or share any user data, and promised to keep the data private for 90 days. *Id.* at 3. Further, Torrone made false and potentially defamatory statements about the Company, including but not limited to false and misleading statements about the Company's intellectual property, commercial traction, and user base. *Id.* Torrone also asserted inflammatory statements about Flux's CEO that were false and without any factual basis. *Id.*

**2. Flux's Cease-and-Desist Letter and Plaintiffs' Response**

Torrone's May 22 Email clearly implied to Flux that Torrone had identified a security vulnerability; exploited it to obtain unauthorized, non-public access to Flux's systems; and had, in

FENWICK & WEST LLP
ATTORNEYS AT LAW

fact, taken and still possessed non-public Flux data from those systems, without authorization. Flux was understandably concerned about Torrone's self-reporting that he had exploited a security vulnerability and had taken it upon himself to access, and still was in possession of, non-public documents without authorization from Flux's non-public systems. Despite its concern, Flux did not immediately file a lawsuit against Torrone or anyone else. Instead, Flux undertook to engage with Torrone, to understand what had happened and close off any real security vulnerability, and to make sure that he was no longer engaging in any unauthorized access to Flux's systems.

Accordingly, on May 22, 2026, counsel for Flux sent a standard cease-and-desist letter to Torrone, together with Fried and Adafruit ("Cease-and-Desist Letter") that notified Plaintiffs that, based on the information available to Flux, Torrone's actions may have violated the CFAA; Adafruit and Fried may have aided and abetted those violations; and Torrone's statements in the May 22 Email were false and potentially defamatory. Compl. Ex. M.

In order for Flux to evaluate the extent of Torrone's potentially unauthorized access to its systems and prevent any further harm from the dissemination of the Company's private data, the Cease-and-Desist Letter made a series of basic requests for information that would be expected in this situation: Flux asked Plaintiffs to provide an inventory of all data and information of any kind that Plaintiffs obtained from Flux's computer network, segregate and preserve any information obtained, confirm in writing that Flux's information was not shared with any other persons or entities, and refrain from sharing publicly any of Flux's private information. *Id.* at 3. The letter also asked Plaintiffs to confirm that they had not, and would not, publish and share further the false statements in Torrone's May 22 Email. *Id.*

Despite Torrone having previously reported to Flux that he had gained access to non-public Flux data, and the concern Torrone expressed about the security of Flux's data, Torrone and Plaintiffs chose not to provide any of the information requested by Flux to understand what, exactly, Torrone had done to gain access to the supposedly non-public information he had taken and of which he was still in possession. Instead, Plaintiffs hired counsel, who responded on May 26, 2026 to the Cease-and-Desist Letter. In his response, counsel for Torrone instead presented Torrone as a legitimate security researcher, stating that "the Department of Justice announced a policy in 2022

FENWICK & WEST LLP
ATTORNEYS AT LAW

(updated in 2025) that it will not charge cases under the CFAA involving good-faith security research." Compl. Ex. O, ECF No. 1-15 (May 26, 2026 email from Martin Schwimmer to Jon Lenzner). The email also asserted that Flux's FAQ allowed the reporting of security issues, and claimed that "Adafruit complied with the standard protocol for disclosing security issues [by] investigat[ing] the security and user experience of the website as both a reviewer and a registered customer of Flux's product." *Id* at 2. The email also claimed that "Adafruit reported its findings solely to Flux and provided the information necessary to allow Flux to reproduce Adafruit's findings," and that "Adafruit very explicitly noted that there was no request made to Flux tied to the disclosure." *Id.*

Other than stating that "Adafruit did not obtain, and therefore could not retain, data from the three documents in the test," the email provided no information about what, exactly, Torrone had done, and no explanation that Torrone had not, in fact, violated the CFAA. *Id.* For this reason, far from reassuring Flux, Plaintiffs' May 26 response relying on the "good faith security research" exception to prosecution of an otherwise criminal CFAA violation reinforced Flux's view that Torrone had, in fact, engaged in conduct that would otherwise be a CFAA violation: namely, bypassing Flux's security measures to obtain unauthorized, non-public access to Flux's systems, which he had then used on May 22 to send a threatening email to Flux. And Flux was understandably alarmed by Torrone's failure to offer any assurances to Flux that he was no longer continuing to engage in unauthorized access to Flux's systems, and whether he would agree to delete any non-public data he had obtained or would obtain in the future from Flux's systems.

On May 28, 2026, Flux's counsel responded to Plaintiffs' counsel, stating that Flux disagreed that Torrone had engaged in good faith security research,[1] and noting that even if he did,

[1] Notably, Torrone, who had no formal credentials or background as an actual security researcher, did not merely report a vulnerability and explain how Flux could replicate (and fix) it. Instead, Torrone reported having obtained three non-public Flux documents in an email in which he only promised to keep private the information in those documents for 90 days, implicitly threatening publication of that information, all following Flux's polite declination to answer questions he previously had posed to Flux. He then refused to confirm deletion of that information or provide sufficient information Flux could use to replicate the supposed exploit. Given this conduct, Flux reasonably concluded that Torrone's conduct—obtaining and retaining information not necessary to report a bug, and using it to threaten Flux—was not actually that of a good faith security researcher merely alerting Flux to cybersecurity vulnerabilities. *See* U.S. Dep't of Just., Just. Manual § 9-48.000 – Computer Fraud and Abuse Act (2002) (defining "good faith security

Fenwick & West LLP
Attorneys at Law

it did not change the definition of unlawful conduct under the CFAA or the availability of a civil suit or equitable relief against a person who had used unauthorized access to unlawfully take non-public data. Compl. Ex. P, ECF No. 1-16 (May 28, 2026 email from Jon Lenzner to Martin Schwimmer). Flux's counsel noted, in particular, that the totality of Torrone's conduct—including Torrone's access to and exfiltration of data from Flux's network, and Torrone's false accusations and prior threats—did not suggest that his actions were solely for the purpose of good faith testing carried out in a manner to avoid any harm to the Company. *Id*. at 2. Flux's counsel also stated that Flux was "open to *quickly* reaching a reasonable understanding in order to resolve this matter," but that "a necessary step toward that resolution is receiving your client's assurances on how they have handled Flux's information." *Id.* Flux's counsel explained that they were "appropriately concerned" about a person that "has now gained unauthorized access to our client's systems." *Id.*

Torrone and his counsel never responded to the May 28 email from Flux's counsel. And at no point prior to filing this case did Torrone, or the other Plaintiffs, inform Flux of the key representations that they have now made in their Complaint, specifically that: (1) "[t]he information contained in Torrone's security vulnerability report to Flux was obtained by accessing information available out in the open to anyone who visits Flux's website," and (2) "[n]either Torrone nor anyone else at Adafruit ever bypassed a security measure on the Flux site or exceeded the scope of their permissions to learn of the security flaw." Compl. ¶ 46. Prior to filing the Complaint, neither Torrone nor the other Plaintiffs disclosed the specific actions Torrone took in order to prepare the "security vulnerability report," as they now purport to do in the Complaint. *See id.* ¶ 47. Nor did Plaintiffs disclose to Flux prior to filing the Complaint that Torrone did not access Flux's non-public information, or make any further attempt to answer Flux's questions or resolve the dispute. Instead, Plaintiffs rushed to court.

After Plaintiffs' communication regarding the DOJ "good faith security research" exception to prosecution of CFAA violations, Flux, concerned about unauthorized access to its systems, hired a forensic consultant to review Torrone's claims that a "significant security flaw" allowed him to

---

research" as "accessing a computer solely for purposes of good-faith testing, investigation, and/or correction of a security flaw or vulnerability" and "where the information derived from the activity is used primarily to promote the security or safety" of the computer system accessed).

access nonpublic Flux systems or information. That investigation determined that Torrone had overstated his own conduct in the May 22 Email, and had not, in fact, identified a security vulnerability that allowed him to obtain unauthorized access to Flux's nonpublic systems. Plaintiffs have acknowledged in their Complaint that this "significant security vulnerability" appears merely to have been the ability to see information publicly available through Flux's website anonymously without the need to complete log-in credentials. *See* Compl. ¶ 47.

### C. This Litigation

Instead of simply providing truthful information about the supposed security vulnerability that Torrone had identified, on June 5, 2026, Adafruit, Torrone, and Fried filed the Complaint against Flux in this case, seeking (1) a declaratory judgment that they did not violate the CFAA in reporting the purported security flaw to Flux; and (2) a declaratory judgment that their statements in the May 22 Email did not defame Flux. ECF No. 1. In addition to the declaratory judgment, Plaintiffs seek an order enjoining Flux and its agents, attorneys, and assigns from asserting claims for violation of the CFAA or defamation against Plaintiffs. *Id.* at 15.

Based upon (1) the investigation Flux conducted regarding the security of its website and systems after Plaintiffs refused to provide information to Flux following the May 22 Cease-and-Desist Letter, (2) the sworn statements Plaintiffs have made in their Complaint (assuming they are true), and (3) the burdens on all parties and the Court of continuing pointless litigation, Flux has decided to release its CFAA claim against Plaintiffs. Accordingly, concurrently with this motion to dismiss, Flux has executed, sent to Plaintiffs' counsel, and filed a unilateral release of any CFAA claim that it may have against Adafruit, Torrone, or Fried based upon Torrone's May 22, 2026 "report" to Flux. In particular, the unilateral release provides:

> Flux hereby perpetually, unconditionally, and irrevocably releases and disclaims any intent to file any claim against Plaintiffs Adafruit Industries, LLC, Phillip Torrone, or Limor Fried under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, that is based upon or related to the actions by Plaintiffs that led to the "security vulnerability report" sent by Mr. Torrone to Flux on May 22, 2026.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## III. ARGUMENT

### A. This Court Lacks Subject Matter Jurisdiction Over Flux's Claim for a Declaratory Judgment Regarding Violations of the CFAA

#### 1. The Court Cannot Issue a Declaratory Judgment if the Claim is Moot

Article III of the U.S. Constitution grants federal courts the authority to adjudicate "cases" and "controversies." U.S. Const., Art. III, § 2. Federal courts have "'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Id.* at 90–91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for Article III purposes—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

"A federal court cannot issue a declaratory judgment if a claim has become moot." *Pub. Util. Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1459 (9th Cir. 1996) (dismissing appeals as moot). In a declaratory judgment action, a covenant not to sue or a release of claims may moot the declaratory judgment claim so long as it is broad enough that the defendant "cannot reasonably be expected" to enforce its rights in the future. *Already*, 558 U.S. at 93–95 (holding that "unconditional and irrevocable" covenant not to enforce a trademark mooted counterclaim for declaratory judgment that the trademark was invalid); *see also Buzzballz, LLC v. MPL Brands NV, Inc.*, 826 F. Supp. 3d 1093, 1100–02 (N.D. Cal. 2025) (dismissing declaratory judgment counterclaims as moot based on covenant not to sue); *Westburg v. Good Life Advisors, LLC*, 2019 WL 1546949, at *2–3 (S.D. Cal. June 8, 2019) (holding that declaratory judgment defendant's release of CFAA claim mooted the claim and dismissing claim for lack of subject matter

jurisdiction); *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347–48 (Fed. Cir. 2007) (affirming dismissal of declaratory judgment counterclaims following patent holder's voluntary dismissal and covenant not to sue).

**2. Flux's Release Moots Plaintiffs' Claim Based Upon the CFAA**

Flux's release is unconditional, irrevocable, and tailored to the specific claim that is the focus of Plaintiffs' request for a declaratory judgment. In particular, Plaintiffs seek a declaratory judgment "that they did not violate the CFAA in reporting to Flux a security flaw they discovered based wholly on publicly available information on Flux's website." Compl. ¶ 59. Flux's release "perpetually, unconditionally, and irrevocably releases and disclaims any intent to file any claim against Plaintiffs" that is "based upon or related to the 'security vulnerability report' sent by Mr. Torrone to Flux on May 22, 2026." Flux's release judicially estops Flux from ever bringing a lawsuit against Plaintiffs for violation of the CFAA based upon the report in the May 22 Email, creating a judicially enforceable waiver that moots the claim. *See Westburg*, 2019 WL 1546949, at *2–3. Accordingly, Plaintiffs' claim for a declaratory judgment that they have not violated the CFAA is moot and must be dismissed. *See Buzzballz, LLC*, 826 F. Supp. 3d at 1100–02; *Westburg*, 2019 WL 1546949 at *2–3; *Benitec Australia*, 495 F.3d at 1347–48.

**B. This Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claim**

The Declaratory Judgment Act does not provide an independent basis for federal jurisdiction. *See Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) ("[F]ederal courts have discretion under the [Declaratory Judgment Act] only as to whether to award declaratory relief pursuant to the jurisdiction that they must properly derive from the underlying controversy between the litigants."); *Rivas Rosales v. Barr*, 2020 WL 1505682, at *3 (N.D. Cal. Mar. 30, 2020) ("[T]he Declaratory Judgment Act does not confer jurisdiction because it creates a remedy, not an independent basis for federal jurisdiction.").

As Plaintiffs themselves acknowledge in their Complaint, the Court lacks original jurisdiction over the claim for a declaratory judgment on the state law claim of whether Plaintiffs defamed Flux. *See* 28 U.S.C. § 1367(a); Compl. ¶ 13 (asserting that the Court has supplemental

jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' request for a declaratory judgment that Plaintiffs did not defame Flux and corresponding injunctive relief).

Because the sole federal claim is moot and the case is at the pleading stage, the Court should decline to exercise supplemental jurisdiction over the remaining declaratory judgment state law claim. *See* 28 U.S.C. § 1367(c)(3) (permitting court to decline to exercise supplemental jurisdiction after dismissing all claims over which it has original jurisdiction). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (*superseded by statute on other grounds as stated in Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right"); *Ove v. Gwinn*, 264 F.3d 817, 816 (9th Cir. 2001) (affirming dismissal of state law claims once lone federal claim was dismissed); *Westburg*, 2019 WL 1546949, at *3 (declining to exercise supplemental jurisdiction over state law claims after dismissing federal declaratory judgment claim predicated on CFAA violations as moot); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 2022 WL 345066, at *7 (N.D. Cal. Feb. 4, 2022) (declining to exercise supplemental jurisdiction after dismissing federal claims because "as the case remains at the pleading stage, there are no apparent considerations weighing in favor of retaining jurisdiction over the state law claims").

This usual practice is even more obviously appropriate when, as here, the state law claim over which the Court would exercise supplemental jurisdiction is an unripe claim for declaratory judgment. Flux has not filed a defamation case against Plaintiffs, and never said it intended to do so. Indeed, Flux's Cease-and-Desist Letter only stated that Torrone's statements were "potentially defamatory," and there was, and continues to be, no present threat of litigation from Flux of this claim. *See* Compl. Ex. M. There is no prudential basis for a federal court to keep, and adjudicate, declaratory judgment on this unripe state law claim.

Plaintiffs could have avoided this lawsuit simply by explaining through counsel what

FENWICK & WEST LLP
ATTORNEYS AT LAW

Torrone had actually done. Instead, they chose to rush into federal court, seeking declaratory judgment, on a case that was never going to be brought against them if the assertions in their Complaint are true. The only federal claim in the case is now moot, and this Court clearly should not waste any additional precious federal judicial resources on the matter to resolve a declaratory judgment action on a state law claim that Defendant never even asserted against Plaintiffs, much less brought.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' claim for a declaratory judgment that they have not violated the CFAA should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and the Court should decline to exercise supplemental jurisdiction over the remaining state law claim.

Dated: August 31, 2026

FENWICK & WEST LLP

By: /s/ *Jon Lenzner*
Jon Lenzner
Benjamin S. Kingsley

Attorneys for Defendant
DEFY GRAVITY, INC. d/b/a FLUX